IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **SCOTTSDALE INSURANCE, et al.,** | ) | |
| | ) | 8:06CV16 |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **AMERICAN RE-INSURANCE CO.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on Scottsdale Insurance Company's (Scottsdale) Motion to Compel Further Response to Production of Documents by American ReInsurance Company (American Re) (Filing No. 33). Scottsdale filed a brief (Filing No. 34), with exhibits attached to the motion and brief, and a reply brief (Filing No. 37). American Re filed a brief (Filing No. 36), with exhibits attached, in opposition to the motion. On the record before the court it appears the parties made good faith attempts to resolve the parties' dispute without court involvement. **See** Fed. R. Civ. P. 37; NECivR 7.1(i).

## BACKGROUND

This case arises from a dispute over insurance coverage following a collision when a tractor trailer struck several other vehicles, resulting in six deaths. **See** Filing No. 11 ¶ 11. The owner of the tractor trailer, Twin Lake Trucking, Ltd. (Twin Lake) sought coverage for the accident claims from its primary insurer, Great West Casualty Company (Great West) and its umbrella insurer, Continental Western Insurance Company (Continental). *Id.* ¶ 12. Prior to the accident, Somerset Holdings, Inc. f/k/a Hull & Company Mid-America, Inc. (Hull), a wholesale insurance intermediary, bound $4 million of umbrella insurance with Continental and bound reinsurance for the umbrella coverage with American Re for $2 million and with Employers Reinsurance Corporation (Employers Re) for $2 million. *Id.* ¶¶ 3, 10. Continental and Hull assigned any and all rights each had against American Re to Scottsdale, the errors and omissions insurer of Hull. *Id.* ¶¶ 5, 18. Accordingly, Scottsdale is bringing the instant action as an assignee of Continental's claims against American Re and as assignee and subrogee of Hull's claims against American Re. *Id.* ¶ 6.

On April 24, 2006, Scottsdale filed an amended complaint seeking declaratory and other relief against American Re.  **See** Filing No. 11.  Scottsdale alleges American Re refuses to provide reinsurance to Continental for any settlements relating the accident.  Continental sought indemnity from Hull.  American Re alleges Hull improperly placed the reinsurance coverage with American Re in breach of various binding guidelines and agreements.  Hull, Continental and Scottsdale entered into a settlement agreement involving Continental's claim against Hull for the amount American Re allegedly owes Continental related to the accident settlements, $1,362,492.79.  Based on the above allegations, Scottsdale instituted claims against American Re for breach of contract (Count I and IX), specific performance (Count II), tortious interference (Count III), breach of covenant of good faith and fair dealing (Count IV), unjust enrichment (Count V and VI), negligence (Count VII and VIII) and declaratory judgment (Count X).  In response, American Re, now known as Munich Re America, Inc., denies liability and alleges claims against Scottsdale for fraud (Count I), based on Hull's conduct in submitting the subject insurance to American Re, and declaratory judgment (Count II).  **See** Filing No. 14.  Similarly, American Re separately alleges claims against Continental and Hull based on fraud (Count I), breach of contract (Count II), negligence (Count III) and declaratory judgment.  *Id.*

Scottsdale now seeks an order compelling American Re to supplement its responses to Request for Production Nos. 3, 4, 5, 11, 18, 19 and 20.  The parties focus the majority of their efforts on Request for Production Nos. 18 and 19.  In fact, American Re states "[t]he remaining requests are largely moot, with one exception (Request No. 3), given Munich Re's written assurances to Scottsdale's counsel that it has produced all responsive, non-privileged documents in its possession."  **See** Filing No. 36, p. 5.  Scottsdale does not dispute the statement in its reply.  The court will address each dispute below.

2

**ANALYSIS**

With regard to production of documents and things, Fed. R. Civ. P. 34(b) provides:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

See Fed. R. Civ. P. 34(b).

"All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted). However, the burden is on the party seeking discovery to show the responding party has control over the requested documents. ***SEC v. Credit Bancorp., Ltd.***, 194 F.R.D. 469, 472 (D.C.N.Y. 2000).

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Non-party subpoenas are subject to the relevancy requirement as discovery from parties in a case. ***Pointer v. DART***, 417 F.3d 819, 821 (8th Cir. 2005). Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978). Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that the information sought can have no possible bearing on the subject matter of the action. **See *Burlington Ins. Co. v. Okie Dokie, Inc.***, 368 F. Supp. 2d 83, 86 (D. D.C. 2005). Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery. **See *Rubin v. Islamic Republic***

3

*of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). However, the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. **Hofer v. Mack Trucks, Inc.**, 981 F.2d 377, 380 (8th Cir. 1993). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. **See Cervantes v. Time, Inc.**, 464 F.2d 986, 994 (8th Cir. 1972). The court may issue a protective order to prevent discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). The District Court "enjoys considerable discretion over discovery matters" and may limit the scope of discovery, if it has a good reason to do so. **Burlington Ins.**, 368 F. Supp. 2d at 86; **Pointer**, 417 F.3d at 821.

**A.     Request for Production Nos. 4, 5, 11 and 20**

Scottsdale's concern with American Re's responses to Request for Production Nos. 4, 5, 11 and 20, is primarily whether the responses are complete. American Re listed several objections, then answered listing certain documents. Scottsdale states it is unclear whether American Re produced all responsive, non-privileged documents. Furthermore, Scottsdale states American Re failed to list any privileged documents. American Re states it provided Scottsdale with a written assurance that it had produced all non-privileged information responsive to the requests and a privilege log, as of November 30, 2006. **See** Filing No. 36 p. 10-11 & n.3 and Exhibit F. Scottsdale fails to specify what documents, if any, it feels are outstanding or should be compelled. Accordingly, Scottsdale's motion to compel supplemental responses to Request for Production Nos. 4, 5, 11 and 20 is denied.

**B.     Request for Production No. 3**

In Request for Production No. 3, Scottsdale seeks "Any and all documents related to American Reinsurance Company's policies and procedures for declining reinsurance." **See** Filing No. 34 p. 4. American Re responded by stating:

> Munich Re objects to this Request on the grounds that it is vague and ambiguous and requires speculation about the

4

> information sought, it seeks information which is irrelevant to the subject matter in the pending action and it is not reasonably calculated to lead to the discovery of admissible evidence; it is overly broad and unduly burdensome in scope; it seeks information which is protected by the attorney-client privilege and work product doctrine; and it seeks privileged, confidential and/or proprietary business information. Subject to and without waiving the General Objections and specific objections stated above, Munich Re responds to this Request by referring Scottsdale to the underwriting guidelines in effect during the relevant time period between Munich Re and Hull and/or Continental, the Commercial Umbrella Liability Quota Share Facultative Binding Agreement, the April 2005 bordereau that Munich Re received from Hull and/or Continental [referring] to "Twin Lake," and the non-privileged documents contained in American Re's claim and underwriting files - all of which will be provided to Scottsdale at a mutually convenient time and location.

**See** Filing No. 34 p. 4.

Scottsdale asserts the only documents produced were those relating to the Twin Lake reinsurance at issue. Scottsdale seeks to obtain documents providing more general "polices and procedures for declining reinsurance coverage." **See** Filing No. 34 p. 6. Specifically, Scottsdale alleges American Re violated its own polices and procedures by failing to decline, in writing and within 10 days, the reinsurance it issued to Twin Lake. As an example, Scottsdale points to a provision entitled "Attachment Risk" in the Facultative Reinsurance Placement Slip Commercial/Personal Umbrella Liability Quota Share Facultative Binding Agreement that was in effect between American Re and Continental. **See** Filing No. 34 p.5-6. Scottsdale contends the heart of the issue is whether American Re violated its own policy because it declined coverage when it failed to decline the reinsurance policy within a specified time frame.

American Re contends the request is so vague, ambiguous and overly broad that American Re cannot determine whether Scottsdale seeks documents related to its decision to decline coverage for a particular reinsurance risk or declination of claims made for reinsurance. American Re argues that if Scottsdale seeks documents related to declination of claims made for reinsurance, then Scottsdale requests every insurance

policy relating to a declined claim and every insurance claim file ever declined. American Re states although the parties conferred, Scottsdale refused to clarify the request.

Requests for production should identify categories of documents with reasonable precision. ***Schartz v. Unified Sch. Dist. No. 512***, No. Civ. A. 95-2491-EEO, 1996 WL 741384, *1 (D. Kan. Dec. 18, 1996). "If an omnibus phrase modifies a sufficiently specific type of information or documents, the request may survive an objection that it is overly broad. If it modifies general categories of information or documents, however, the discovery request is generally objectionable, as overly broad or unduly burdensome." ***Id.*** (concluding request seeking all documents used to calculate damages and request seeking all documents for the plaintiff's accounts were sufficiently precise). "A party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support." ***Cotracom Commodity Trading Co. v. Seaboard Corp.***, 189 F.R.D. 655, 665 (D. Kan. 1999) (citation omitted). A court requires no further response when inadequate guidance exists to determine the proper scope of a request for discovery. ***Cotracom***, 189 F.R.D. at 666.

It appears the parties have a misunderstanding about Request for Production No. 3. However, based on Scottsdale's explanation, there is a remedy for the misunderstanding. The court will modify the request to be consistent with the discovery Scottsdale states it seeks. The request appears overly broad for two reasons. First, the term "policies" was interpreted by American Re to mean insurance policies. Second, the phrase "declining reinsurance" does not specify whether it refers to a particular reinsurance risk or to a claim for reinsurance coverage. Based on Scottsdale's brief, the court finds Scottsdale does not seek the claim file for every claim that has ever been declined. Scottsdale seeks the written methods or procedures used by American Re to govern the process of declining a particular reinsurance risk. Request for Production No. 3 is deemed to be modified accordingly. Based on this modification, Scottsdale's motion to compel is granted and American Re shall supplement its response to Request for Production No. 3.

**C.     Request for Production Nos. 18 and 19**

In Request for Production No. 18, Scottsdale seeks "All underwriting files for any and all risks presented to American Re-insurance Company for reinsurance from January 1, 1999 to May 31, 2004 that involved a trucking company."  **See** Filing No. 34 p. 7. Similarly, in Request for Production No. 19 Scottsdale seeks "All documents relating to reinsurance American Re-insurance Company issued on risks involving trucking companies from January 1, 1999 to May 31, 2004."  *Id.* at p. 8.

American Re gave the same response to both requests:

> Munich Re objects to this Request on the grounds that it is vague and ambiguous and requires speculation about the information sought; it seeks information which is irrelevant to the subject matter in the pending action and it is not reasonably calculated to lead to the discovery of admissible evidence; it is overly broad and unduly burdensome in scope; it seeks information which is protected by the attorney-client privilege and work product doctrine; and it seeks privileged, confidential and/or proprietary business information. Subject to and without waiving the General Objections and specific objections stated above, Munich Re responds to this Request by referring Scottsdale to the underwriting guidelines in effect during the relevant time period between Munich Re and Hull and/or Continental, the Commercial Umbrella Liability Quota Share Facultative Binding Agreement, the April 2005 bordereau that Munich Re received from Hull and/or Continental referring to "Twin Lake," and the non-privileged documents contained in American Re's claim and underwriting files - all of which will be produced to Scottsdale at a mutually convenient time and location.

*Id.*

Scottsdale argues American Re cannot defend this action by alleging Hull was negligent if American Re would have accepted the Twin Lake risk if it had been submitted properly.  In other words, "Scottsdale maintains that had Hull referred the risk to Am Re prior to binding, Am Re would have accepted the risk and that therefore, Hull's failure to follow the binding guidelines did not cause a loss to Am Re.  It further maintains that Am Re is using the failure to follow the binding guidelines as a pretext to avoid a risk that it otherwise would have accepted."  **See** Filing No. 34 p. 9-10.  To make such a showing Scottsdale seeks discovery about whether American Re reinsured risks similar to Twin

Lake. In further support of the discovery request, Scottsdale has evidence American Re did accept trucking risks that were submitted to it for approval on more than one occasion in 2004. **See** Filing No. 34 p. 10, Exhibit 2.

American Re maintains Request for Production Nos. 18 and 19 are overly broad and seek irrelevant information about whether it was appropriate for American Re to deny reinsurance for the Twin Lake claim. Specifically, American Re argues this is a contractual dispute defined by the underwriting guidelines in effect between American Re and Hull, therefore extrinsic evidence about "other" trucking risks is irrelevant to interpretation of the contract. Further, American Re contends although Scottsdale relies on the "special acceptance" provision in the underwriting guidelines, the requests seek more general information regarding *any* trucking risk without limitation as to location, underwriting guidelines, intermediary, client, branch office, underwriter or type of trucking company, and regardless of the nature of that company's business operations and risk level. In order to resolve the dispute over its relevancy objection, American Re states it requested, without success, that Scottsdale narrow the request to "other trucking risks bearing the same characteristics as the three examples cited by Scottsdale, i.e., having a direct relationship to the intermediary in this case, underwriting guidelines in this case, and reinsured risk in this case." **See** Filing No. 36 p. 7. Finally, American Re argues the requests create an undue burden because they would cause American Re to search every file in every office worldwide. American Re submitted the affidavit of Steve Garcia, Vice President of Claims, who described the hardship faced by American Re if forced to respond to Scottsdale's broad request. **See** Filing No. 36, Exhibit E. Mr. Garcia also describes different types of reinsurance contracts and the likelihood the production requested would contain confidential or privileged materials. *Id.* In its reply brief, Scottsdale agreed to limit the requests to "all non-privileged documents relating to any and all domestic (i.e. the 50 United States) facultative reinsurance issued on trucking risks from January 1, 2001 to May 31, 2004." **See** Filing No. 37 p. 2.

The court finds Scottsdale has met its threshold burden of showing how the requested discovery, as limited, is relevant to claims or defenses raised in this case, particularly the negligence claim. Scottsdale describes with a reasonable degree of specificity, the information it hopes to obtain and the importance to its case. American Re

has shown the initial requests as served are overly broad in scope, accordingly the requests will be narrowed as conceded by Scottsdale. American Re fails to show principled justification for additionally narrowing the requests or for refusal to permit the discovery sought. Accordingly, Scottsdale's motion will be granted with regard to Request for Production Nos. 18 and 19, as modified to all non-privileged documents relating to any and all domestic (i.e. the 50 United States) facultative reinsurance issued on trucking risks from January 1, 2001 to May 31, 2004.

**D.    Sanctions**

With regard to motions to compel discovery responses, under Federal Rule of Civil Procedure 37(a)(4)(C):

> If the motion is granted in part and denied in part, the court . . . may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

Under the circumstances here, the court declines to award sanctions to either party based on the instant discovery dispute. Upon consideration,

**IT IS ORDERED:**

1.    Scottsdale's Motion to Compel Further Response to Production of Documents by American ReInsurance Company (Filing No. 33) is granted, in part, and denied, in part. The motion is denied with regard to Request for Production Nos. 4, 5, 11 and 20. The motion is granted with regard to Request for Production Nos. 3, 18 and 19 as modified herein.

2.    American Re shall have to **on or before February 22, 2007**, to supplement its responses to Request for Production Nos. 3, 18 and 19, and to produce the responsive documents as requested.

DATED this 2nd day of February, 2007.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge

9