## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE, et al., | ) | |
| | ) | **8:06CV16** |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| AMERICAN RE-INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the Motion To Compel Scottsdale Insurance Company To Produce Documents (Filing No. 51) of defendant, counter-plaintiff and third-party plaintiff, American Re-Insurance Company (American Re), now known as Munich Re America, Inc.  On the record before the court, it appears the parties made good faith attempts to resolve the parties' dispute without court involvement.  **See** Fed. R. Civ. P. 37; NECivR 7.1(I).

## BACKGROUND

This case arises from a dispute over insurance coverage following a collision when a tractor trailer struck several other vehicles, resulting in six deaths.  **See** Filing No. 11 ¶ 11.  The owner of the tractor trailer, Twin Lake Trucking, Ltd. (Twin Lake) sought coverage for the accident claims from its primary insurer, Great West Casualty Company (Great West) and its umbrella insurer, Continental Western Insurance Company (Continental).  *Id.* ¶ 12.  Prior to the accident, Somerset Holdings, Inc. f/k/a Hull & Company Mid-America, Inc. (Hull), a wholesale insurance intermediary, bound $4 million of umbrella insurance with Continental Western Insurance Company and bound reinsurance for the umbrella coverage with American Re for $2 million and with Employers Reinsurance Corporation (Employers Re) for $2 million.  *Id.* ¶¶ 3, 10.  Continental and Hull assigned any and all rights each had against American Re to Scottsdale, the errors and omissions insurer of Hull.  *Id.* ¶¶ 5, 18.  Accordingly, Scottsdale is bringing the instant action as an assignee of Continental's claims against American Re and as assignee and subrogee of Hull's claims against American Re.  *Id.* ¶ 6.

On April 24, 2006, Scottsdale filed an amended complaint seeking declaratory and other relief against American Re.  **See** Filing No. 11.  Scottsdale alleges American Re refused to provide reinsurance to Continental for any settlements relating the accident. Continental sought indemnity from Hull.  American Re alleges Hull improperly placed the reinsurance coverage with American Re in breach of various binding guidelines and agreements.  Hull, Continental and Scottsdale entered into a settlement agreement involving Continental's claim against Hull for the amount American Re allegedly owes Continental related to the accident settlements, $1,362,492.79.  Based on the above allegations, Scottsdale instituted claims against American Re for breach of contract (Count I and IX), specific performance (Count II), tortious interference (Count III), breach of covenant of good faith and fair dealing (Count IV), unjust enrichment (Count V and VI), negligence (Count VII and VIII) and declaratory judgment (Count X).  In response, American Re denies liability and alleges claims against Scottsdale for fraud (Count I), based on Hull's conduct in submitting the subject insurance to American Re, and declaratory judgment (Count II).  **See** Filing No. 14.  Similarly, American Re separately alleges claims against Continental and Hull based on fraud (Count I), breach of contract (Count II), negligence (Count III) and declaratory judgment.  ***Id.***

Scottsdale sought leave to file a Second Amended Complaint on August 9, 2007, to reflect  an additional $162,276.40 paid by Scottsdale to Continental on behalf of Hull. **See** Filing No. 50.

Scottsdale served discovery responses to American Re in May, 2007.  **See** Filing No. 51-2, Exhibit A.  The parties conferred regarding the responses on May 29, 2007.  ***Id.*** On August 8, 2007, American Re filed the instant motion to compel Scottsdale pursuant to Fed. R. Civ. P. 34 and 37 and NECivR 7.1(2)(I) to produce documents responsive to Requests  For Production Nos. 1, 2, 3, 4, 5, 6 and 7 contained in American Re's Second Request for Production within 14 days from the date the court grants relief in favor of American Re.  **See** Filing No. 51.  Specifically, American Re asked for Scottsdale to produce certain documentation relating to premium bordereaux in Requests For Production Nos. 1, 3, 5, 6 and 7.  Requests For Production Nos. 1, 3, 5, 6 and 7 seek the following:

> **Request No. 1**:
> All underwriting guidelines in effect between Scottsdale and Hull relating to Hull's placement of insurance and/or reinsurance for Scottsdale between 1997 and the present.

2

**Request No. 3**:
All insurance and reinsurance underwriting guidelines, guides, and manuals relating to Scottsdale's placement of insurance and/or reinsurance through an insurance intermediary such as a broker, managing general underwriter, and/or a managing general agent.

**Request No. 5**:
All guides, manuals, directives, memorandum, and/or training material relating to the form, content, format and/or specificity of premium bordereaux that Scottsdale accepts from insurance intermediaries such as a broker, managing general underwriter, and/or a managing general agent.

**Request No. 6**:
All correspondence between Scottsdale and any other individual or entity between 1992 and the present relating to the form, content, format and/or specificity of premium bordereaux that Scottsdale accepts from insurance intermediaries such as a broker, managing general underwriter, and/or managing general agent.

**Request No. 7**:
All guides, manuals, directives, memorandum, and/or training material relating to the form, content, format and/or specificity of claims bordereaux that Scottsdale accepts from policyholders, third-party administrators or any insurance intermediaries such as a broker, managing general underwriter, and/or a managing general agent regarding claims submitted to Scottsdale.

**See** Filing No. 52 p. 9. American Re contends they agreed to allow Scottsdale to forego producing every bordereaux it received from ever broker across the country. **See** Filing No. 52 p. 7. American Re states it has agreed to select five brokers and have Scottsdale provide the bordereux it received from those brokers between April and June 2004. *Id*.

Additionally, American Re requests information relating to Scottsdale's Trucking Company Underwriting in Requests for Production Nos. 2 and 4. Requests for Production Nos. 2 and 4 seek the following:

**Request No. 2**:
All insurance and reinsurance underwriting guidelines, guides and manuals relating to Scottsdale's underwriting of insurance and/or reinsurance of Trucking Companies. A "Trucking Company" is defined to mean any person or entity involved in the business of transporting or hauling goods, equipment and other tangible property over the road for a fee.

<u>**Request No. 4**</u>:
> All documents relating to trucking company accounts in which an insurance or reinsurance intermediary such as a broker, managing general underwriter, and/or managing general agent requested a "special acceptance" to bind insurance or reinsurance with Scottsdale between 1997 and the present.

**See** Filing No. 52 p. 10-11.  American Re filed a Memorandum and an index of evidence in support of its motion (Filing No. 52).  Scottsdale filed a Response to the instant motion and an index of evidence (Filing No. 57).  American Re filed a Reply in opposition to Scottsdale's response (Filing No. 58).


## ANALYSIS

With regard to production of documents and things, Fed. R. Civ. P. 34(b) provides:

> The party upon whom the request is served shall serve a written response within 30 days after the service of the request. . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

**See** Fed. R. Civ. P. 34(b).

"All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence.  **See** Fed. R. Civ. P. 26(b)(1).  Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings.  ***Pointer v. DART***, 417 F.3d 819, 821 (8th Cir. 2005).  Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978).  Discovery requests should be considered relevant if there is any possibility that the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear that

the information sought can have no possible bearing on the subject matter of the action. **See *Burlington Ins. Co. v. Okie Dokie, Inc.*,** 368 F. Supp. 2d 83, 86 (D. D.C. 2005). Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery. **See *Rubin v. Islamic Republic of Iran***, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004). However, the proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. ***Hofer v. Mack Trucks, Inc.***, 981 F.2d 377, 380 (8th Cir. 1993). Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case. **See *Cervantes v. Time, Inc.***, 464 F.2d 986, 994 (8th Cir. 1972). The court may issue a protective order to prevent discovery where "justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). "The party resisting facially overbroad or unduly burdensome discovery need not provide specific, detailed support." ***Cotracom Commodity Trading Co. v. Seaboard Corp.***, 189 F.R.D. 655, 665 (D. Kan. 1999) (citation omitted). A court requires no further response when inadequate guidance exists to determine the proper scope of a request for discovery. ***Cotracom***, 189 F.R.D. at 666. The District Court "enjoys considerable discretion over discovery matters" and may limit the scope of discovery, if it has a good reason to do so. ***Burlington Ins.***, 368 F. Supp. 2d at 86; ***Pointer***, 417 F.3d at 821.

## A.   Documents Relating to Premium Bordereaux

### 1.   Request Nos. 1, 3, 5, 6, and 7

In Request for Production No. 1, American Re requests documentation relating to the underwriting guidelines in effect between Scottsdale and Hull relating to Hull's placement of insurance and/or reinsurance for Scottsdale between 1997and the present. American Re contends the underwriting guidelines presumably contain reference to the premium bordereaux Hull provides to Scottsdale and may contain information regarding the design, format, and content of the bordereaux at issue in this case. **See** Filing No. 58 p. 3. American Re seeks to find whether Scottsdale's underwriting guidelines contradict the

opinions that Scottsdale's expert, Mr. Polluck, offered in this case. Scottsdale objects to this request and states that there has been no evidence presented in the present case about whether the underwriting guidelines, guides, and manuals contained information on the content of premium bordereaux. **See** Filing No. 57 p. 7. Scottsdale also contends this request is arbitrary and burdensome because there is no justification for a request for records dating back to 1997. **Id.** at 6.

Request For Production Nos. 3 and 5, relate to information Scottsdale intends to seek regarding information in reference to the use, format, and specificity of premiums bordereaux Scottsdale receives from intermediaries. **See** Filing No. 58 p. 4. American Re contends they are entitled to probe whether Scottsdale's business practices are consistent with the litigation opinions Mr. Pollock has made in this case. **Id.** Scottsdale maintains these requests are "burdensome" because this would force Scottsdale to produce documents dating back to 1982. **See** Filing No. 57 p. 6. However, American Re states in its reply it will agree to narrow its request to documents in effect after January 1, 1997 (Filing No. 58 p. 4).

Request For Production No. 6 relates to correspondence between Scottsdale and any other entity relating to form, content, format, and/or specificity of premium bordereaux Scottsdale accepts from insurance intermediaries since 1992. American Re contends, similar to its position regarding Requests for Production Nos. 3 and 5, it is entitled to probe whether these documents are consistent with Mr. Polluck's opinions. **See** Filing No. 58. Scottsdale asserts this request is "extraordinarily burdensome" and would require review of "hundreds of thousands if not millions of pages of documents to see if such correspondence exists." **See** Filing No. 57 p. 7. However, American Re states in its Reply, it will narrow this request to 1997. **See** Filing No. 58 p. 5. American Re contends it is necessary for it to make such a request in the event such guidelines were enacted prior to the current dispute and in effect during the time frame of the current dispute. **Id**.

Request No. 7 seeks Scottsdale's guides, manuals, directives, memorandum and/or training material relating to claims bordereaux. American Re claims it made this request upon the logic that claims bordereaux contain similar information as premium bordereaux. **See** Filing No. 58. Scottsdale contends the claims bordereaux are irrelevant and contain different information as premium bordereaux at issue in the present case. **See** Filing No.

57. For that reason, American Re has agreed to withdraw Request for Production No. 7. Accordingly, Request For Production No. 7 is withdrawn.

The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. *Id.* "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." *Id.* (citations omitted). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents. *See Id.* The District Court "enjoys considerable discretion over discovery matters" and may limit the scope of discovery, if it has a good reason to do so. *Burlington Ins.*, 368 F. Supp. 2d at 86. Additionally, where relevant and non-privileged facts remain hidden in an attorney's file and where production of these facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents . . . might be useful for purposes of impeachment or corroboration." *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

Scottsdale does not specifically argue the merits of each individual request, but generally disputes the relevance, overbreadth and burden related to these requests. This does not give the court sufficient detail about the nature of the burden in terms of time, money, and procedure required for production of the requested documents. Scottsdale also contends requests seeking premium bordreaux presumably found within underwriting guidelines, guides, and manuals should be barred because there has been no evidence presented in the present cause that would support this assumption. *See* Filing No. 57. However, this is precisely what information American Re seeks to obtain through its Requests for Production Nos. 1, 3, 5, and 6. The documents sought by American Re may be essential to the preparation of its case at trial and discovery production should be made.

7

The court finds Scottsdale's argument insufficient to bar production.  However, the court does not see the relevance of Scottsdale producing documents prior to 1997.  Accordingly, Scottsdale shall supplement its response to American Re's Requests for Production Nos. 1, 3, 5, and 6 to include responsive documents created on or after January 1, 1997.

## B.   Documents Relating To Trucking Company Underwriting Material

Request for Production Nos. 2 and 4 seek documentation relating to Scottsdale's underwriting of trucking risks.  Request for Production No. 2 seeks underwriting guidelines tailored to trucking risks.   Request for Production No. 4 seeks information relating to specific instances where a request for a "special acceptance" has been made to bind Scottsdale to accept a trucking risk between 1997 and present.  American Re states the information sought in Requests For Production Nos. 2 and 4 are very important to the defense of this case and for impeachment purposes of Mr. Pollock.  **See** Filing No. 58. American Re contends Mr. Pollock provided the opinion American Re would have accepted the Twin Lake Trucking risk had the intermediary (Hull) properly referred it.  **See** Filing No. 52 p. 11.  However, American Re contends because Mr. Pollock does not mention the trucking company underwriting guidelines American Re maintained in May 2004 and produced to Scottsdale in his opinion, his opinion is baseless.  ***Id***.  American Re contends this is evidence that Mr. Pollock does not view such guidelines as important in an industry where special referrals are made to an insurance company to accept a risk that is otherwise unacceptable.  **See** Filing No. 58 p. 6.  Therefore, American Re states it is entitled to impeach Mr. Pollock based on Mr. Pollock's omission.  **See** Filing No. 58 p. 6.

Scottsdale objects to Requests for Production Nos. 2 and 4 and maintains that an important issue in this case is whether American Re would have accepted the Twin Lake risk had it been submitted under the "special acceptance" provision of American Re's guidelines with Hull.  **See** Filling No. 57 p. 9.  Scottsdale contends it is illogical and irrelevant for American Re to maintain that  the review of Scottsdale's guidelines could help determine whether American Re would have underwritten the Twin Lake Risk.  ***Id***. Scottsdale also contends that it is irrelevant whether Scottsdale abides by its own guidelines or whether it grants special acceptances.  ***Id***.  Additionally, Scottsdale contends compliance with Request No. 4 is incredibly burdensome and irrelevant.  Scottsdale states American Re seeks "tens of thousands of pages of documents contained in underwriting

files" in documents on any type of policy issued to a trucking company including workers compensation, general liability, and motor vehicle. *Id*. Scottsdale presented evidence that the number of transportation policies Scottsdale issued since 2002 have a liability component total over 98,170[1]. **See** Filing No. 57-3, Exhibit 2, p.2. American Re has agreed to accept a sample of 100 files from all files Scottsdale identifies as responsive. **See** Filing No. 58 p. 6. Additionally, American Re agreed to limit its request to policies covering automobile liability of trucking companies. *Id*.

The court finds American Re has not met its threshold burden of showing how the requested discovery, as limited, is relevant to claims or defenses raised in this case. American Re describes with a reasonable degree of specificity, the information it hopes to obtain and the importance to its case at trial. However, the American Re has provided inadequate guidance to determine the proper scope of its request and how the request might be useful for impeachment or corroboration. Scottsdale has shown the requests as served are overly broad in scope, irrelevant, and its justification for its refusal of discovery. Accordingly, American Re's motion will be denied with regard to Request for Production Nos. 2 and 4.


## C.   Sanctions

With regard to motions to compel discovery responses, under Federal Rule of Civil Procedure 37(a)(4)(C):

> If the motion is granted in part and denied in part, the court . . . may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.

The court is not required to apportion attorney fees or expenses between the parties. **See** Fed. R. Civ. P. 37(a)(4)(C) (noting the court *may* apportion expenses incurred between the parties when a motion to compel is granted in part and denied in part). Under the circumstances, the court does not find the imposition of sanctions to be warranted in this case and will not assess sanctions against either party with regard to the instant discovery dispute.

---

[1] Scottsdale contends the number of documents sought is substantially higher because the request dates back to documents produced in 1997.

8:06-cv-00016-JFB-TDT   Doc # 60   Filed: 09/10/07   Page 10 of 10 - Page ID # 486

**IT IS ORDERED:**

1.      American Re's Motion to Compel Scottsdale Insurance Company to Produce Documents (Filing No. 51) is granted, in part, and denied, in part.  The motion is granted with regard to Request for Production Nos. 1, 3, 5, and 6 as modified herein.  The motion is withdrawn with regard to Request for Production No. 7.  The motion is denied with regard to Request for Production Nos. 2 and 4.

2.      Scottsdale shall have to **on or before September 28, 2007**, to supplement its responses to Request for Production Nos. 1, 3, 5, and 6, and to produce the responsive documents as requested.

DATED this 10th day of September, 2007.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge
