IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SCOTTSDALE INSURANCE, COMPANY, as Assignee of Continental Western Insurance Company and Subrogee of Somerset Holdings, CONTINENTAL WESTERN INSURANCE COMPANY, and SOMERSET HOLDINGS, INC., | ) ) ) ) ) ) ) ) | 8:06CV16 |
| Plaintiffs, | ) ) | MEMORANDUM AND ORDER |
| v. | ) ) | |
| AMERICAN RE-INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) ) | |

This matter is before the court on multiple motions: defendant's motion to dismiss Count X of the second amended complaint, Filing No. 64; defendant's motion for judgment on the pleadings on Count V and VI, Filing No. 68; defendant's motion for summary judgment against plaintiff Scottsdale, Filing No. 70; plaintiff's motion for summary judgment, Filing No. 72; defendant's motion for summary judgment against plaintiff, Filing No. 75; plaintiff Scottsdale's motion in limine, Filing No. 84; defendant's motion in limine to exclude testimony, Filing No. 88; plaintiff Scottsdale's motion in limine, Filing No. 127; plaintiff Scottsdale's motion in limine, Filing No. 129; defendant's motion in limine, Filing No. 131; defendant's motion in limine, Filing No. 132; defendant's motion in limine, Filing No. 135; defendant's motion in limine, Filing No. 136; plaintiffs' motion to file substitute affidavits, Filing No. 144; plaintiffs' motion to file substitute affidavits, Filing No. 146; and plaintiffs' motion for leave to file a surreply brief, Filing No. 161.

## BACKGROUND

The primary parties involved in this dispute are set forth as follows. Plaintiff Scottsdale Insurance Company ("Scottsdale") is an insurance company organized under Ohio law with its principal place of business in Scottsdale, Arizona, and is the error and omissions holder for Somerset Holdings, Inc., f/k/a Hull & Company, Mid-America, Inc. (hereinafter "Hull"). Defendant American Re-Insurance Company ("American Re-Insurance") sells reinsurance and is organized in Delaware with its principal place of business in Princeton, New Jersey. Hull brokers insurance polices to retail producers as a wholesale insurance intermediary. Hull is incorporated in Nebraska with its principal place of business in Lincoln, Nebraska. Continental Western Insurance Company ("Continental") is an insurance company organized under the state of Iowa with its principal place of business in Des Moines, Iowa. Continental and Hull have both assigned any and all rights each had against American Re-Insurance in this lawsuit to Scottsdale. Scottsdale brings this claim as an assignee of Continental's claims against American Re-Insurance and as a subrogee of Hull's claims against American Re-Insurance. This action is brought pursuant to 28 U.S.C. § 2201 *et seq.*, for declaratory judgment and additional claims as discussed hereinafter.

Twin Lake Trucking, Ltd. is in the trucking business and is from East St. Louis, Illinois. On or about March 2004, Hull bound $4,000,000 of umbrella insurance with Continental. Hull allegedly bound reinsurance for the umbrella coverage in the amount of $2,000,000 with American Re-Insurance and $2,000,000 with Employers Reinsurance Corp. ("Employers Reinsurance"). On June 29, 2004, a tractor trailer driven in Peabody, Kansas, by an employee of Twin Lake Tucking struck a number of vehicles which resulted in the deaths of six individuals including an unborn fetus. Claims were filed against Twin

2

Lake Trucking who then sought coverage from its primary insurer, Great West Casualty Company ("Great West") and its umbrella carrier, Continental.

The six fatality claims have been settled for $4.3 million. Great West paid $968,171.38, and Continental paid $3,331,828.62 of the settlement. Continental also had liability under the umbrella policy for additional bodily injury and property damage and later settled these claims for $162,276.40. Employers Reinsurance is providing reinsurance for the umbrella coverage. American Re-Insurance, however, claims that Hull improperly breached various agreements and improperly attempted to place reinsurance coverage with it. Consequently, American Re-Insurance has refused to pay any reinsurance for this accident. Continental has paid American Re-Insurance's alleged share of settlement payment in the amount of $1,524,769.19. This lawsuit concerns whether American Re-Insurance has a duty to provide coverage for this accident.

On February 15, 2005, Continental made a demand on Hull for contractual indemnity for the amount of reinsurance that American Re-Insurance, if liable, should have paid. This agreement between Hull and Continental states:

> (D) Agency agrees to indemnify, defend and hold Company harmless against any liability which Company may sustain or incur directly or indirectly due to or arising out of any obligation, act, failure to act, or transaction created or done by the negligence of Agency, Agency's employee, and/or Agency's sub-Agent in violation of, in excess of, or in contravention of the power and authority granted to Agency as set forth and described in this Agreement. Agency shall be liable for all damages, including but not limited to, fines and penalties incurred due to the action of Agency.

Filing No. 73, Ex. C, § 8(D), p. SO152. Hull is the Agency under this agreement.

In August 2005 and July 2007, Hull, Continental and Scottsdale entered into settlement agreements involving Continental's claim against Hull. Scottsdale paid $1,524,769.19 to Continental for the claim against Hull. This is the amount that Scottsdale

3

argues American Re-Insurance should have paid to Continental for the reinsurance. Continental then assigned to Scottsdale any and all rights and causes of action it had against American Re-Insurance.

Scottsdale has now sued American Re-Insurance for breach of contract, Count I; specific performance, Count II; tortious interference, Count III; breach of covenant of good faith and fair dealing, Count IV; unjust enrichment, Count V; unjust enrichment, Count VI; negligence, Count VII; negligence, Count VIII; breach of contract, Count IX; fraud, Count X; and declaratory judgment, Count XI.

American Re-Insurance filed a second amended answer alleging numerous affirmative defenses; a counterclaim against Scottsdale Insurance alleging fraud and asking for  a declaratory judgment finding that any reinsurance claim against it does not apply in this case as there is an exclusion for reinsurance coverage for the commercial or rental use of commercial automobiles by truckmen. Filing No. 63.  American Re-Insurance claims that Hull attempted to improperly and fraudulently bind reinsurance with it. American Re-Insurance filed a third-party complaint against Continental and Hull alleging that Hull could not automatically write coverage for "the commercial or retail use of commercial automobiles by truckmen regardless of radius," and could not automatically offer general liability coverage for "Trucking Companies."  Filing No. 63, ¶ 8, Third-Party Complaint. American Re-Insurance contends that the Insured's name was really Twin Lake Trucking, Ltd., but American Re-Insurance was told by Hull that the name was Twin Lake, thereby eliminating the possibility that American Re-Insurance would know this was a trucking business.  American Re-Insurance contends in its third-party complaint that it did not know this was a trucking business, and that such a trucking business was excluded from the automatic reinsurance program.

4

**Motion to Dismiss, Filing No. 64**

American Re-Insurance[1] filed a motion to dismiss Count X of the second amended complaint which alleges fraud. Filing No. 64. American Re-Insurance contends that Count X of Scottsdale's second amended complaint should be dismissed for three reasons: (1) Scottsdale misrepresented to the court the contents of the amendment; (2) the newly added fraud claim was a surprise to American Re-Insurance and was filed the day before discovery ended; and (3) the fraud claim does not comply with the pleading specificity requirements of Fed. R. Civ. P. 9(b). Scottsdale represented to this court in its motion to amend that "nothing in the Second Amended Complaint adds new legal theories to the case and the underlying facts remain the same" and that "the only thing that changes is the amount paid to Continental Western Insurance Company by Scottsdale." Filing No. 50. In fact, argues American Re-Insurance, Scottsdale added a fraud claim.

Scottsdale responds that Hull, on May 31, 2006, as third-party defendant, in its answer to the third-party complaint asserted a fraud counterclaim against American Re-Insurance. On August 9, 2007, Scottsdale filed its motion for leave to file its second amended complaint. Attached to the motion was a copy of the proposed complaint which included the identical fraud claim that had already been asserted by Hull in the counterclaim. American Re-Insurance did not oppose the motion, and on August 30, 2007, the court granted the motion to file the second amended complaint.

After reviewing the motion, the court finds that Scottsdale did not intentionally mislead the court or the parties. The second amended complaint was attached to the motion. This fraud cause of action had clearly been around for a year and a half.

---

[1]American Re-Insurance is now known as Munich Reinsurance America, Inc. However, for purposes of this order, the court will continue to refer to the company as American Re-Insurance.

Testimony regarding the fraud claim has been taken in depositions, and the fraud issue has been discussed in emails.  *See* Filing No. 65, Exs. A-D.  Counsel for American Re-Insurance contends the fraud issue was baseless back on July 24, 2007, and refers to a March 20, 2007, deposition as support.  Filing No.65, Exs. B,  C, and D.  The court finds no prejudice has resulted against American Re-Insurance as a result of this amendment. With regard to the failure to specifically plead as required under Fed. R. Civ. P. 9(b), the court notes first that American Re-Insurance failed to raise this issue with regard to the previous counterclaim filed by Hull, and the wording is identical.  Second, the court has reviewed the allegations and finds they are sufficient in any event. See Filing No. 61, Count X.  Accordingly, for the reasons stated herein, the court denies the motion to dismiss, Filing No. 64, Count X, of the second amended complaint.

### Motion for Judgment on the Pleadings on Counts V and VI, Filing No. 68

American Re-Insurance moves for judgment on the pleadings on Counts V and VI of Scottsdale's second amended complaint pursuant to Fed. R. Civ. P. 12(c).  Filing No. 68.  Under Counts V and VI, Scottsdale seeks recovery from American Re-Insurance for unjust enrichment.   Each count alleges that Hull bound $2,000,000 of reinsurance coverage with American Re-Insurance for the Twin Lake Trucking Company.  American Re-Insurance alleges that these counts are defective as a matter of law, because a party cannot allege unjust enrichment where a contractual relationship allegedly exists. *Washa v. Miller*, 546 N.W.2d 813, 821 (Neb. 1996).  Scottsdale responded to this motion.  Filing No. 101. Scottsdale contends that American Re-Insurance has refused to provide reinsurance to Continental for any settlements relating to the accident, and Continental has had to bear the cost of the settlement which should have been paid for by American Re-Insurance in the amount of $1,524,769.19.  American Re-Insurance received a premium

payment of $6,430, a partial premium credit was taken in April 2005, and the remaining premium is still with American Re-Insurance.  Although American Re-Insurance says no reinsurance contract existed, Scottsdale argues that it has not fully refunded Continental for the premium Continental paid to American Re-Insurance.  American Re-Insurance contends that it has attempted to return the premium, but Hull has refused to accept it.

A motion for judgment on the pleadings will be granted when the moving party can show that there is no material fact in dispute and the moving party is entitled to judgment as a matter of law.  *Potthoff v. Morin*, 245 F.3d 710, 715 (8th Cir. 2001).  Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience . . . when there is no contractual relationship. . . .  Unjust enrichment implies a contract so that one party may recover damages from another."  *Kisicki v. Mid-America Fin. Inv. Corp.,* No. A-01-708, 2002 WL 31654490 at *6  (Neb. App. Nov. 26, 2002).  The court finds that for the purposes of this motion Scottsdale has pleaded sufficient facts to state a claim of unjust enrichment.

### STANDARD OF REVIEW - Summary Judgment Motions

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).  Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.  *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence.  *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998).  The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor.  *Id.*  Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Facts are viewed in the light most favorable to the nonmoving party, "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit."  *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998).  In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations.  *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

In passing on a motion for summary judgment, it is not the court's role to decide the merits.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion for summary judgment, district court should not weigh evidence or attempt to determine truth of matter).  The court must simply determine whether there exists a genuine dispute of material fact.  *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## DISCUSSION

### A.  American Re-Insurance's Summary Judgment Motion Against Scottsdale, Filing No. 70

American Re-Insurance moves for summary judgment pursuant to Fed. R. Civ. P. 56 against Scottsdale.  Filing No. 70.  American Re-Insurance argues that Hull was a managing general partner for Continental for the purpose of obtaining reinsurance. However, American Re-Insurance contends that Hull had limited authority to "automatically" place insurance on certain particular risks.  There were two ways Hull could bind insurance with American Re-Insurance.  First, under the "automatic" provisions, American Re-Insurance required Hull to file a list of policyholders each month, known as a bordereau, and then American Re-Insurance had ten days to notify Hull if it did not want to insure one of the risks on the bordereau.  Second, there were certain risks under the agreement which prohibited Hull from placing any reinsurance on certain high hazard risks such as trucking operations. In the case of a high hazard, Hull was required to provide information to American Re-Insurance in advance, either by phone, email or letter, and then American Re-Insurance would approve or deny the request.

In May 2004, American Re-Insurance received this monthly list with the name "Twin Lake" on a bordereau. It listed Twin Lake instead of the real name which is "Twin Lake Trucking, Ltd."  It is undisputed that Hull did not inform American Re-Insurance that this

was a trucking business, and it did not seek prior approval or acceptance from American Re-Insurance for this high hazard risk.

Following the accident, American Re-Insurance informed Hull that trucking risks were excluded and denied the claim. American Re-Insurance says that following its denial, both Continental and Hull acknowledged the error. Scottsdale then paid $1,524,769.19 to Continental on behalf of Hull and received an assignment from Continental to pursue claims against American Re-Insurance. Scottsdale then filed this lawsuit as a subrogee of Hull and as an assignee of Continental. All of the claims in the second amended complaint, except the two negligence claims and to some degree the equitable claims, presume the existence of a valid, enforceable reinsurance contract between Continental and American Re-Insurance. American Re-Insurance argues that because Hull, Continental and American Re-Insurance have all admitted that the contract was never properly placed, Scottsdale, as assignee of Continental, and as subrogee of Hull, is required to accept these admissions. Therefore, argues American Re-Insurance, it is entitled to summary judgment on all nine contract and equitable claims. Further, the remaining two negligence claims are without merit, argues American Re-Insurance, given that the basis of the duty is the reinsurance agreement, which American Re-Insurance argues never existed.

In 2001 American Re-Insurance issued an alert to all of its underwriters prohibiting them from reinsuring trucking risks, unless the underwriter possessed information about the trucking risk. Filing No. 73, Ex. A. Such information included: hiring practices for the drivers, skill level for drivers, driver turnover, disciplinary turnover for drivers, pay basis for drivers, supervision of drivers, age of drivers, driver testing, safety programs, safety meetings, fleet maintenance and operational details. Filing No. 73, Ex. A, AMRE03072-

03084.  On August 9, 2002, Continental and American Re-Insurance entered into a reinsurance contract entitled "Commercial Umbrella Liability Quota Share Facultative Binding Agreement" ("Binding Agreement").  Filing No. 73, Ex. B.  This agreement provided that Continental's general agent, Hull, would place reinsurance with American Re-Insurance on Continental's behalf, and Hull would be subject to the Binding Agreement.  The reinsurance agreement states that certain risks shall be excluded: "The commercial or rental use of commercial automobiles by truckmen, regardless of radius" and "automobile fleets with more than 20 power units."  Art, VIII, Exclusions, Sec. D, nos. 6 and 9.  Filing No. 73, Ex. B, AMRE0036.  Under Coverage in Article V, it says "Automobile liability, not greater than 20 units, (No heavy trucks/tractors)."  Filing No. 73, Ex. b.  The 2004 Underwriting Guidelines issued by American Re-Insurance state:

> 21. The 2004 Underwriting Guidelines contained the following provision:
>
> ## VI.  Eligibility
>
> * * *
>
>> E.  All insurance coverages, types of risks with respect to the automobile or liability coverage, and *classes of business other than those contained in the following lists are eligible to be written automatically under this program.* Although these categories will appear extensive, we have designed your program to fit your current book of business. It is also important to remember that some of the classes listed may be covered under the terms of our agreement when an underwriting referral is first made to American Re-Insurance.
>
> * * *
>
> The Following Risks [exclusions from automatic binding]
> **Automobile Liability with respect to:**
>
> * * *

6. The commercial or retail use of commercial automobiles by truckmen regardless of radius.

* * *

Classes of Business Considered "High Hazard" are also Excluded

* * *

Truckmen - Regardless of Radius

In addition, there is a "special acceptance" provision that states:

**III. Special Acceptance**

Limits up to $5,000,000 on high hazard commercial umbrellas are available by referral to the Overland Park Office of American Re-Insurance Company, and risks that fall outside of the parameters established by the guidelines may also be referred. In most cases, a telephone conversation with one of our underwriters will enable you to proceed with the quotation without interruption. These Special Acceptances may be reported on the Bordereau, and each Special Acceptance will be confirmed in writing in order to document your underwriting file.

Filing No. 73, Exhibit E at pp. H 00475-480.  American Re-Insurance contends that each time Hull wanted a special acceptance, it was required to communicate with an American Re-Insurance underwriter and ask for confirmation.  When it did not need special acceptance, Hull submitted its monthly report (bordereau) to American Re-Insurance identifying the name of the policyholder.  Hull never sought special acceptance from American Re-Insurance for Twin Lake Trucking, Ltd.

According to American Re-Insurance, "effective April 2004, Continental issued to "'Twin Lake Trucking, Ltd.,' a commercial umbrella insurance liability policy with limits of $4 million excess a $1 million primary business automobile policy that Great Western Insurance company issued to Twin Lake Trucking, Ltd."  Filing No. 71, brief at 12. Continental instructed Hull to place reinsurance with one or more reinsurers to cover some

of Continental's exposure. Hull ultimately reinsured $1.9 million of Continental's lowest $2,000,000 excess exposure with Employers Reinsurance Company. Under this agreement, Continental carried $100,000 retention on the lowest $2,000,000 layer of reinsurance with Employer Reinsurance Company. Hull apparently tried to place the top $2,000,000 of insurance with XL Reinsurance and General Reinsurance. Both declined the risk.

Sandy Johnson, a Hull representative, then attempted to automatically put the Twin Lake risk with American Re-Insurance by placing it on the May 2004 bordereau. Filing No. 73, Ex. F at p. 42, lines 1-18; p. 78, lines 24-25; and p. 79, lines 1-16; Filing No. 73, Dep. Ex. 6, attached to Filing No. 73, as Ex. O, at H 00296. Ms. Johnson knew at the time she placed the Twin Lake on the automatic monthly report that trucking risks were not automatic placements. American Re-Insurance did not know that Twin Lake was a trucking company when it appeared on the monthly report. Mr. Ken Baker, managing director of Hull's Lincoln, Nebraska, branch office described the placement with American Re-Insurance as a "very bad mistake" and that Ms. Johnson was "obviously not thinking clearly." Filing No. 73, Ex. Q. Mr. Baker further noted that "the Am Re contract does not allow us to write truckers in our authority." Dep. Ex. 9; Filing No. 73, Ex. Y. Continental's underwriting president, Walter Stradley, likewise admitted that Hull committed an error. Filing No. 73, Ex. X. Hull fined Ms. Johnson $25,000 for her "very bad mistake." Filing No. 73, Ex. D at p. 115, lines 14-25. Hull's general counsel likewise admitted that Hull made a mistake. Filing No. 73, Ex. BB at S0209. Mr. Henry Cerco, Hull's deposition designee, stated that he did not believe American Re-Insurance committed fraud or interfered with a contractual business relationship. Filing No. 73, Ex. EE, p. 68, lines 5-10. American Re-Insurance instructed Hull to take the premium credit of $6,430 back. Hull took back

$2,308.  American Re-Insurance alleges that Hull refuses to take the remainder of the credit payment.

With regard to Hull's errors and omissions claim as to Scottsdale, American Re-Insurance contends that Hull identified as Twin Lake Trucking and not Twin Lake when reporting to Scottsdale; admitted it did not seek special acceptance from American Re-Insurance; admitted Twin Lake Trucking was subject to the special acceptance requirement; and admitted that the trucking risks were an excluded class.  Filing No. 73, Exs. JJ and, KK.  Scottsdale then paid Continental on Hull's behalf and took an assignment from Continental and became the subrogee of Hull.  Again, American Re-Insurance argues that Hull could not "automatically" create a reinsurance contract on a trucking risk,  nor did Hull seek a special acceptance from American Re-Insurance on behalf of Twin Lake Trucking.  Accordingly, contends American Re-Insurance, all breach of contract and negligence claims must fail as a matter of law.  Further, any derivative claims by Scottsdale must fail, as there exists no valid enforceable contract.  Also, American Re-Insurance states that Scottsdale offers absolutely no evidence of its fraud claim, and in fact, the evidence is to the contrary with both Mr. Henry Cerco and Ken Baker testifying that they did not believe fraud had been committed.

Scottsdale responds arguing that Hull had on several occasions in the past bound high hazard risks without referral and American Re-Insurance accepted those risks.  Filing No. 104, Ex. A.  In addition, Scottsdale contends that American Re-Insurance accepted risks even when the insured's name was abbreviated.  Filing No. 104, Ex. B, Affidavit ("Aff.") of Sandy Johnson, with attached exhibits.  In 2003-2004, out of 52 total entries, 29 were abbreviated.  Filing No. 104, Ex. B, Aff. of Sandy Johnson, Ex. 1.  There were similar numbers of abbreviations the following years.  *Id.*

14

Further, Scottsdale argues that American Re-Insurance was required to decline within ten days after listing on the bordereaux.  American Re-Insurance did not decline to insure Twin Lake Trucking.  Also, Scottsdale argues that American Re-Insurance had previously accepted special acceptance risks via submissions on the bordereaux.  However, Scottsdale also agrees that during yearly audits American Re-Insurance pointed out these mistakes to Hull and told Hull that the files were not referred properly and should be referred on renewal.  Filing No. 104, Ex. A.  Scottsdale additionally argues that the burden is on American Re-Insurance to show that American Re-Insurance would not have accepted the risk prior to binding.  35 A.L.R. 3d 821 at Summary (1971).

The court finds American Re-Insurance's motion for summary judgment must be granted.  In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.  *Day v. Toman*, 266 F.3d 831, 836 (8th Cir. 2001). The court must give the terms of the contract their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them.  *Id.*  The contract language between American Re-Insurance and Hull is clear and unambiguous.  The court finds that the underwriters were prohibited from reinsuring trucking risks without substantial information about the company and without specific approval from American Re-Insurance.  Hull served as Continental's managing agent.  Hull was allowed to provide reinsurance for Continental through American Re-Insurance.  American Re-Insurance did in fact classify trucking risks as a "loss leader" and issued an underwriting alert.  Filing No. 73, Ex. A.  On January 1, 2004, certain underwriting guidelines became effective.  Hull was precluded from placing reinsurance with American Re-Insurance on truck risks without specific permission or special acceptance.  Hull did not seek that permission or acceptance.  Hull placed and reinsured $1,900,000 of Continental's lowest $2,000,000 excess exposure with

Employers Reinsurance, and Continental carried $100,000 retention on the lowest $2,000,000.  Hull attempted to place the remaining $2,000,000 with XL and then with General Reinsurance who both declined.  As a third resort, Hull then placed the name "Twin Lake" on the bordereau for American Re-Insurance.  There was no way that American Re-Insurance could have known that Twin Lake was a trucking company.  Hull was required to request coverage for trucking companies.  It made no such request.  Under the agreement with American Re-Insurance, Hull was not permitted to automatically place trucking risks on the bordereau.  After the accident, Hull fined Sandy Johnson $25,000 for her mistake.  Everyone agrees Hull made the mistake.  There is absolutely no dispute about that fact.  Even Continental took the position that Hull made a material mistake.  The secondary authority cited by Scottsdale for the proposition that American Re-Insurance must prove it would not have accepted the risk is misapplied in this case.  Those sources deal with a situation where an insurer sues an agent for indemnity.  Here, Scottsdale sued on behalf of agent (Hull) claiming it is entitled to insurance from a reinsurer.  This is dissimilar as there is no agent negligence involved with American Re-Insurance.  Further, no evidence was submitted by Scottsdale that American Re-Insurance would have accepted this risk in any event.  Mr. Ken Baker of Hull testified that:

> Q:   There's a $1.8 or $1.6 million dollar wrong here is what it comes down to.  You know that, I know that and everybody here knows that.  Who is wrong?
>
> A:   We [Hull] were wrong in what we did.
>
> Q:   Period?
>
> A:   Period.

Dep. of Kenneth Baker, Filing No. 121, Ex. G.  Based on the overwhelming evidence, the court finds that American Re-Insurance's motion for summary judgment must be granted.

### B.  **Motion for Summary Judgment by Scottsdale, Filing No. 72**

The court has already concluded that no contract exists between Hull and American Re-Insurance and that summary judgment should be granted as a matter of law.   In addition, however, Scottsdale moves for summary judgment on the fraud counterclaims against it filed by American Re-Insurance.   American Re-Insurance argues that the bordeaux submitted by Hull listed the name as "Twin Lake" as opposed to Twin Lake Trucking, Ltd.   American Re-Insurance alleges that this listing was purposefully and deceptively listed.  As a result of this inaccurate listing, American Re-Insurance alleged it was entitled to receive costs and attorney fees in this litigation as well as punitive damages.

The court finds as follows.  Sandy Johnson of Hull admits she made a mistake.  Hull submitted evidence that it had previously abbreviated names on the bordereau for a number of years.  However, following such referrals, each year audits were made, and Hull was informed it had made mistakes and was told certain listings should have been referrals.  However, the contrary evidence which favors American Re-Insurance's cause of action is that Hull attempted to get reinsurance from two other companies.  Hull was unable to obtain such insurance.  Thereafter, it placed Twin Lake, not Twin Lake Trucking, Ltd., on the bordereau. The trucking exclusion in the agreement between American Re-Insurance and Hull was clear and unambiguous, and Hull understood the exclusion existed.   There is no way American Re-Insurance could understand the listing on the bordereau was an excluded trucking risk.

17

The court must first determine which law applies.  As to this allegation of fraud, the court finds that either the law of Kansas or Nebraska will apply.  *See* Restatement (Second) of Conflict of Laws § 148(2) (listing factors to be considered in choosing which law applies in a fraud case).  Kansas is where American Re-Insurance relied on the alleged misrepresentations and where American Re-Insurance received the misrepresentations.  Nebraska is where Hull made the alleged misrepresentations and where Hull is incorporated and does business.  However, after reviewing the law, the court finds that the elements of fraud under both Nebraska and Kansas law are relatively the same and both rely on the Restatement of Torts defining fraud.  Those elements include: a material misrepresentation, that was false, the representation was known to be false or was made in reckless disregard for the truth, the defendant intended for the plaintiff to rely on the statement, and the plaintiff suffered damage as a result.  *Gibb v. Citicorp Mortg, Inc.*, 518 N.W.2d 910, 915 (Neb. 1994); *Miles v. Love*, 573 P.2d 622, 632 (Kan. 1977). [2]

The court will for purposes of this motion assume that American Re-Insurance has met its burden of alleging sufficient evidence of fraud on the first four elements to withstand the motion for summary judgment.  The problem the court has with American Re-Insurance's claim is damages.  First, American Re-Insurance never paid any money on the claim for the accident in question.  Second, the only losses incurred by American Re-Insurance include the litigation costs for this lawsuit.  This court has already concluded that American Re-Insurance in not responsible for any insurance costs relating to the accident in question in this lawsuit.  Nebraska law holds that reliance damages are for "actual

---

[2] The court does note that it could make a difference which law applies if this issue proceeds to trial. Kansas law allows punitive damages, while Nebraska would not allow for punitives.  The court need not decide this issue in this motion.

18

damages." *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 142-43 (Neb. 2000).

*See also Golconda Screw, Inc. v. West Bottoms Ltd.*, 894 P.2d 260, 266 (Kan. 1995) (In

Kansas, litigation costs are "to be awarded as costs separate from the merits of the

action").   Under the state law of either Nebraska or Kansas, it does not appear that

litigation costs can be the basis for damage incurred by the fraud.  American Re-Insurance

agrees that the general rule would not allow it to recover costs of litigation.  However, there

is an exception to this rule which American Re-Insurance relies.  The Restatement of Torts

provides as follows:

> One who through the tort of another has been required to act in the
> protection of his interests by bringing or defending an action against a third
> person is entitled to recover reasonable compensation for loss of time,
> attorney fees and other expenditures thereby suffered or incurred in the
> earlier action.

Restatement (Second) of Torts § 914(2).  American Re-Insurance argues that Kansas and

Nebraska courts have both recognized and accepted this doctrine, relying on *Hawkinson*

*v. Bennett*, 962 P.2d 445 (Kan. 1998), and *Tetherow v. Wolfe*, 392 N.W.2d 374 (Neb.

1996).  In *Hawkinson* the court stated:

> [A]n exception to [the American Rule] has been recognized in Kansas where
> the plaintiff has been forced to litigate against a third party because of some
> tortious conduct of the defendant. The recognized exception is stated as
> follows:  'If one's property is taken, injured or put in jeopardy by another's
> neglect of duty imposed by contract, or by his wrongful act, any necessary
> expense incurred for its recovery, repair or protection is an element of the
> injury.  It is often the legal duty of the injured party to incur such expense to
> prevent or limit the damages; and if it is judicious and made in good faith, it
> is recoverable, though abortive.

962 P.2d at 455 (citations omitted).  The court applied a similar analysis in *Tetherow.*

American Re-Insurance analogizes itself to the parties in both *Hawkinson* and *Tetherow*

and argues this third-party tort rule exception should apply, even though there is only one

lawsuit.  *See, e.g., South Sanpitch Co. v. Pack*, 765 P.2d 1279 (Utah App. 1988) (quiet title action, attorney fees allowed); *Prentice v. North Am. Title Guaranty Corp.*, 381 P.2d 645, 647 (1963) (quiet title action where paid escrow holder made it necessary for vendor of land to file quiet title action against third person, and attorney fees allowed for vendor). American Re-Insurance argues that Scottsdale, by virtue of filing this lawsuit in continuation of Hull's earlier fraud, has required American Re-Insurance to litigate the third-party claims against Hull and against Continental.  Thus, argues American Re-Insurance, it should be able to recover its reasonable attorney fees prosecuting these actions.

The court is not convinced by the reasoning argued by American Re-Insurance and finds there must be actual damages to pursue a fraud claim in this case.  *Nelson,* 605 N.W.2d at 142 (2000).  Actual damages do not include attorney fees.  *See, Tetherow*, 392 N.W.2d at 379 ("One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action.").  The same is true under Kansas law.  *See Golconda Screw, Inc.*, 894 P.2d at 266.  The court agrees with Scottsdale that for Restatement § 914(2) to apply there must have been an earlier action which forced American Re-Insurance to incur litigation costs.  The third-party claims in this case are not the same as an earlier action which is required under § 914(2).  This is the example given in the Restatement:

> A, fraudulently purporting to be an agent for B, contracts with C, who, upon B's failure to perform and in the belief that B is liable, brings unsuccessfully a suit against B. C can recover damages from A for the cost of the proceeding.

Restatement (Second) of Torts § 914(2) illustration 2.  This illustration is dissimilar to the case at hand.  American Re-Insurance has offered no other basis for its argument that it has incurred damages as a result of Hull's alleged fraud.  To do so without a prior finding of fraud would allow the recovery of attorney fees in numerous cases, which is not what the general law provides.  Accordingly, the court will grant Scottsdale's motion for summary judgment as to the fraud claim by American Re-Insurance.

### C. __Filing No. 75 - Summary Judgment by American Re-Insurance against Hull__[3]

In Count I of its counterclaim, Hull alleges that American Re-Insurance interfered with the existing business relationship between Hull and Continental Western by refusing to reinsure the claims arising out of the accident.  The elements of a cause of action for tortious interference with a business relationship are: (1) a contract or business relationship; (2) the wrongdoer's knowledge thereof; (3) the wrongdoer's intentional procurement of the contract's breach or the business relationship's dissolution; (4) the absence of justification; and (5) damages resulting therefrom. *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994).  Tortious interference  "requires an intentional act which induces or causes a breach of contract or termination of the relationship."  *Pettit v. Paxton*, 583 N.W.2d 604, 609-10 (Neb. 1998) (also defining elements that are similar to elements under Kansas law).  The court finds that Hull has not submitted any evidence that it interfered with the Hull-Continental business relationship.  Hull did not even identify a contract that American Re-Insurance interfered with.  Hull has not submitted any evidence that it has ceased doing business with Continental, or that

---

[3]The parties cite both Kansas and Nebraska law.  It does not matter which law applies, as the result is the same in both jurisdictions.

American Re-Insurance intentionally caused it to lose business with Continental.   As previously set forth herein, Hull simply made an error.   The error was not the fault of American Re-Insurance.   The court concludes that the claim is speculative and bogus and fails as a matter of law.

Hull also alleges that American Re-Insurance committed fraud against it.   To establish a prima facie fraud claim, a plaintiff must prove the following elements: (1) a concealment of a material fact; (2) reasonably calculated to deceive; (3) made with the intent to deceive; and (4) resulting in injury or detrimental reliance.   *See O'Loughlin v. The Pritchard Corp.*, 972 F. Supp. 1352 (D. Kan. 1997); 37 Am. Jur. Fraud and Deceit § 475. The plaintiff bears the burden of proof to establish every element of fraud, and the failure to prove any one element precludes recovery.   *Id.*   Absolutely no facts or evidence of fraud has been presented by Hull. The arguments made by Hull are the same ones that have been previously made, and the court has found those arguments to be without merit.   Hull did ask American Re-Insurance for an accommodation payment for Hull's very bad mistake.   American Re-Insurance declined to accommodate Hull's mistake.   There is no fraud in such a denial.   Hull has failed to come forward with any evidence of fraud.   There is simply nothing to submit to a trier of fact on either the tortious interference claim or the fraud claim.   Accordingly, the court will grant American Re-Insurance's motion for summary judgment.

In view of the fact that the court has granted American Re-Insurance's motions for summary judgment and has granted Scottsdale's motion for summary judgment, the court will deny all remaining motions as moot and dismiss the case.

THEREFORE, IT IS ORDERED that:

1.  American Re-Insurance's motion to dismiss Count X of the second amended complaint, Filing No. 64, is denied.

2.  American Re-Insurance's motion for judgment on the pleadings, Filing No. 68, is denied.

3.  American Re-Insurance's motion for summary judgment, Filing No. 70, is granted.

4.  Scottsdale's motion for summary judgment, Filing No. 72, is granted.

5.  American Re-Insurance's motion for summary judgment, Filing No. 75, is granted.

6.  All remaining motions, Filing Nos. 84, 88, 127, 129, 131, 132, 135, 136, 144, 146 and 161, are denied as moot.

7.  A separate judgment will be entered in accordance with this memorandum and order.

DATED this 6th day of May, 2008.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge